BENJAMIN F. COMAN, Receiver, etc., Respondent, v. IRA LAKEY, Appellant.

Defendant's assignors sold to the A. B. W. Company, a manufacturing corporation organized under the general act of 1848 (chap. 40, Laws of 1848), certain machinery on credit, the corporation giving its notes for the purchase-price secured by chattel mortgages upon the machinery. Each mortgage provided that the mortgagees might demand possession at any time, and that until such demand the possession of the mortgagor should be " deemed the possession of an agent or servant, for the sole benefit and advantage of his principal," the mortgagees. The sale was prior to the amendment of said act (chap. 481, Laws of 1871), authorizing such corporations to mortgage their personal property on consent of stockholders. Defendant took possession of the property. Plaintiff claimed title thereto under a levy and sale on execution against the corporation. *Held,* that although the form of the security adopted was prohibited by the said act (§ 2), this did not destroy the equitable rights of the vendors to hold the property as against any one except *bona fide* purchasers, until the purchase-money was paid; that the transaction was in effect a sale upon condition of payment of the purchase-price as specified, when the entire ownership was to be transferred, up to which time it was the intention that the vendors should hold the title and possession; and the corporation received the property *cum onere;* that the rights of the vendors were not dependent entirely upon the act of the corporations in creating a lien, but arose out of the transfer, and are secured by the rule protecting the equitable liens of vendors; and therefore, that as between the parties, defendant was entitled to the property.

But, *held,* that a mortgage upon said property given by said corporation to secure an antecedent debt was void.

(Argued February 3, 1880 ; decided March 19, 1880.)

APPEAL from the judgment of the General Term of the Supreme Court, in the third judicial department, in favor of plaintiff, rendered upon a case submitted under section 372 of the Code of Procedure.

The facts submitted were substantially as follows : On November 25, 1870, Armstrong, Follett & Co., for themselves and one Innis, who had an interest with them, in pursuance of a prior agreement, sold to the Alder Brook Woolen Company, a corporation organized under the general manufacturing act (chap. 40, Laws of 1848),

certain machinery, the said corporation giving its promissory notes for the purchase-price secured by chattel mortgages on said machinery, one given to said Innis, and one to Armstrong, Follett & Co., each of the mortgages contained a clause authorizing the mortgagees, in case of default, or in case they shall sooner demand the mortgaged property to take possession thereof; and also the following : "And until default be made in the payment of the aforesaid sum of money, the said party of the first part to remain and continue in quiet and peaceable possession of said goods and chattels, and the full and free enjoyment of the same, unless the said party of the second part, his executors, administrators or assigns, shall sooner chose to demand the same; and until such demand be made, the possession of the said party of the first part shall be deemed the possession of an agent or servant for the sole benefit and advantage of his principal, the said party of the second part."

Both of these mortgages were assigned and transferred to defendant.

In November, 1871, said corporation executed to Thomas & Co., another chattel mortgage upon the same property to secure an antecedent debt. No written assent of two-thirds of stockholders owning two-thirds of the capital stock of the corporation was filed. In March, 1872, defendant purchased upon foreclosure sale the premises, upon which was the mill in which said machinery then was, and went into possession thereof. In April, 1872, the sheriff, under and by virtue of an execution against said corporation, levied upon said machinery, and sold the interest therein acquired by virtue of the levy to one Price. Plaintiff was thereafter appointed, in supplementary proceedings, receiver of the property and effects of said Price; he demanded the property, but defendant refused to deliver up the same.

*W. F. Cogswell*, for appellant. The transfer of the machinery to the woolen company, and the execution of the mortgage back, was one transaction, and in legal effect was

a conditional sale to the company, by which it had the right to acquire the title to the machinery upon payment of its notes. (*Dusenbury* v. *Hulbert*, 59 N. Y., 541; *Stow* v. *Tifft*, 15 J. R., 458.) The company having obtained its interest in the property, is estopped from asserting that the mortgage which it gave, as the means of obtaining such interest, is void.

*Nathaniel Foote*, for respondent. The chattel mortgages to Armstrong, Follett & Co., and to Innis, having been made in direct violation of positive prohibition of law, are void. (3 Statutes at Large [Edm. ed.], 733; chap. 517, Laws of 1864; 6 Statutes at Large [Edm. ed.], 299; chap. 481, Laws of 1871; 9 Statutes at Large [Edm. ed.], 93, 94; *Leavett* v. *Palmer*, 3 Comst., 19; Field on Corporations, § 273; *Barton* v. *Port Jervis and Union Falls Plank Road Company*, 17 Barb., 397, 404; *Otis* v. *Harrison*, 36 id., 210; 1 Comyn on Contracts, 30; *Henry* v. *The Salina Bank*, 1 Comst., 83; *Pennington* v. *Townsend*, 7 Wend., 276; *Bank of United States* v. *Owens*, 2 Peters, 257; S. C., 8 Curtis, 190; *Richardson* v. *Sibley*, 11 Allen, 65; *Carpenter* v. *Black Hawk Gold Mining Co.*, 65 N. Y., 43; *Cox* v. *Gould*, 4 Blatch., 341; *New York State Loan and Trust Co.* v. *Helmer*, Court of Appeals [20 Alb. L. J.], 36; *Nellis* v. *Clark*, 4 Hill, 424; *Pratt* v. *Eaton*, 18 Hun, 293.) The chattel mortgage to Thomas & Co. was also void, no written assent of the holders of two-thirds of the capital stock having been made or filed. (*Hardman* v. *Bowman*, 39 N. Y., 196; *Rutter* v. *Kilpatrick*, 63 id., 605; Angell and Ames on Corporations, 88; *Farmers' Loan and Trust Co.* v. *Carroll*, 5 Barb., 613; *Green* v. *Seymour*, 3 Sandf., chap. 285; *Ferguson* v. *Norman*, 3 Jurist, 10; S. C. on appeal, 5 Bing. [N. C.], 76; *The Liverpool Borough Bank* v. *Turner*, 29 Law Jour. Rep. [N. S. Chanc.], 827; S. C. on appeal, 30 id., 379; *In re The Girard Provident Assurance Co.*, 38 id., 320; 1 Parsons on Contracts [6th ed.], 140; *Luse* v. *Isthmus Transit Ry. Co.*, 6 Oreg., 125; *Beatty* v.

*Marine Ins. Co.*, 2 J. R., 109; Angell and Ames on Corporations, 278, § 6; *Head* v. *Providence Ins. Co.*, 2 Cranch., 127, 166.) The transaction on November 26, 1870, between Armstrong, Follett & Co., and the Woolen Company, did not constitute a conditional sale of the machinery to said Company. (*Crocker* v. *Whitney*, 71 N. Y., 161, 170; *Otis* v. *Harrison*, 36 Barb., 210; *Pennington* v. *Townsend*, 7 Wend., 276; *Charter* v. *Stevens*, 3 Denio, 33; *Case* v. *Boughton*, 11 Wend., 106.) The Armstrong, Follett & Co. mortgage cannot be upheld on the theory that its holder has a vendor's lien for the purchase-money upon the machinery. (*Gillet, Receiver* v. *Phillips*, 13 N. Y., 114; *Pratt* v. *Eaton*, 18 Hun, 293; Cross on Liens, 322; *Beam* v. *Blanton*, 3 Iredell's Eq., 59–62; *Lupin* v. *Marie*, 6 Wend., 77; *James* v. *Bird, Admrx.*, 8 Leigh, 510; *Fish* v. *Howland*, 1 Paige, 20; *Coit* v. *Fongera*, 36 Barb., 195; *Shirley, Exr.*, etc. v. *Congress Steam Refinery*, 2 Ed. Chy., 305; *White* v. *Williams*, 1 Paige, 501; *Halloch* v. *Smith*, 3 Barb., 267.)

CHURCH, Ch. J. The facts stated in the submission in legal effect constituted a sale of the machinery in controversy by Innis, and the firm of Armstrong, Follett & Co., the defendant's assignors, to the Alder Brook Woolen Company, under an agreement that the property was to be paid for at certain specified periods, and the payments to be secured by the notes of the company, and a chattel mortgage to each of said parties upon the property sold. The transaction was consummated by the delivery of the notes, and the execution and delivery of the mortgages. The defendant, in March, 1872, became the purchaser, upon a foreclosure, of the real estate in which the machinery was situated, and entered into possession of the same, and of the personal property, having become the assignee of the two chattel mortgages. On the 15th of February, 1872, the plaintiff recovered a judgment against the Woolen Company, and issued and delivered an execution to the sheriff, who, on the twelfth day of April, levied upon the machinery, and on the

eighth day of July sold the same, subject to all liens and incumbrances that were paramount to the interest acquired by the judgment and execution. The question presented is, which of these parties has the superior right to the property. The plaintiff rests his contention upon the statute prohibiting corporations, created under the general manufacturing law (chap. 40, Laws of 1848), from mortgaging or creating any lien upon their property, and insists that the mortgages were absolutely void. Section two, of the act aforesaid, declares that corporations created under the act shall be " capable in law of purchasing, holding, and conveying any real and personal estate whatever which may be necessary to enable the said company to carry on their operations named in such certificate, but shall not mortgage the same, or give any lien thereon." This section was modified by chapter 517 of the Laws of 1864, by authorizing corporations to mortgage their real estate, with the written consent of the stockholders owning two-thirds of the capital stock, and by chapter 481 of the Laws of 1871, this modification was extended so as to include personal estate. These amendments indicate that the prohibition clauses were intended for the protection of the stockholders, and that when they consented, the policy of the Legislature was to permit these corporations to incumber their property, the same as individuals.

These mortgages however were executed before the amendments were passed, and while the prohibition contained in the original act was in force, and the amendments are of no value in determining the question involved, except perhaps for the purpose of reflecting light upon the object which the Legislature had in view, and thus to assist in determining the proper rule of construction to be applied. The equities are very strongly in favor of the vendors, who are represented by the defendant. They parted with their property with the intention of retaining by way of a claim, lien, or interest, sufficient to secure them for the payment of the purchase-money. They never intended to part with the absolute property in the chattels, until they were paid for. Conceding

that the form of the security adopted, was prohibited by the statute, does that destroy the equitable right of the vendors to hold the property as against any one except *bona fide* purchasers, until the purchase-money is paid ? The statute does not prohibit a corporation from owning incumbered property, nor from buying such property subject to incumbrances, nor from taking a qualified title, nor from taking property by a conditional sale. The transaction must be construed as a whole, and all the papers must be read together, and in effect it was a sale upon condition of payment of the purchase-price within a specified period. This rule has been recognized in sales of real estate, and I see no reason why it should not apply to personal property. (*Stow* v. *Tifft*, 15 J. R., 458; *Dusenbury* v. *Hulbert*, 59 N. Y., 541.) Courts of equity regard the substance, and not the form of a transaction, and one of the favorite maxims is to regard that as done, which has been agreed to be done, and ought to have been done. Mr. Story says : " The true meaning of this maxim is, that equity will treat the subject as to collateral conveyances and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been, not as the parties might have executed them." (Story's Eq. Jur., §§ 64–69.) Upon this principle, land is often regarded as money, and personal as real estate, and equitable mortgages have been inforced when security has been intended, though not formally executed, and defective instruments supplied. (*Lanning* v. *Tompkins*, 45 Barb.; 308–316, and cases cited ; *Husted* v. *Ingraham*, 75 N. Y., 251–257, and cases cited.) The corporation received this property *cum onere*. The essence of the transaction was that the entire ownership was to be transferred when the consideration was paid, and a clause in the mortgage indicates that such was the intent of the parties.. The mortgage provides that the mortgagees may demand possession at any time, and then declares that " until such demand be made, the possession of the said party of the first part shall be deemed the possession of an agent or servant, for the sole

benefit and advantage of his principal, the said party of the second part." The intent was thus evinced that the vendors were to hold the title and possession until the purchase-price was paid, and the corporation agreed to regard itself as the agent or servant of the mortgagees, in respect to the possession of the property. Suppose the corporation had refused to execute a mortgage for want of power, would it have been permitted to hold the property discharged of the lien? Clearly not. They must have restored the property, or have held it as upon a conditional sale, which was not prohibited by the statute. The vendors' rights are secured by a law higher than, and independent of the statute. They grow out of the transaction itself, and are not dependent entirely upon the act of the corporation in creating a lien, but arise from the act of the vendors in transferring the property, subject to the payment of the purchase-money, and are secured by the rule which protects equitable liens of vendors, and which courts will be astute to enforce, in order to effectuate the real intent of the parties, and require them to do whatever is necessary to conform their acts to the essential nature of the transaction. This view was suggested, but not decided, in *Greenpoint Sugar Co.* v. *Whitin* (69 N. Y., 328). The plaintiff has no equitable rights to this property. However meritorious his judgment, he represents only an ordinary judgment-creditor. He sought to levy upon and sell the machinery as the property of the corporation. He does not deny the debt of the defendant, or its nature, but claims to appropriate the property to the exclusive payment of his debt, because the vendors, in securing the property for the payment of the purchase-money, as they intended to do, mistakenly adopted a form which the statute forbids, and hence the court has no power to give redress. As was said by the chancellor in *Amerman* v. *Wile* (24 N. J. Eq., 13–17), "The complainant has no equity against the vendors in this suit. He sets up none. He neither questions their debt, nor their conduct, nor their right to their lien, except as he calls in question the validity of the mortgage for want of the

certificate of assent.   *   *   *   The complainant is merely a stockholder seeking to deprive them of a lien to which they are equitably entitled as against him. They being in possession of the mortgaged property, and being equitably entitled to the lien they assert, this court will not lend its aid to the complainant in his attempt to deprive them of it." In this case the action can only be maintained by holding that the plaintiff has the legal title to the property, and that the defendant has no legal or equitable interest therein.

In the case of *Cox* v. *Gould* (4 Blatch., 341), cited by the counsel for the plaintiff, a deficiency judgment after the foreclosure of a mortgage substantially executed by the corporation, and sale of the premises, was sought to be recovered against a stockholder. The court very properly held that a liability against a stockholder could not be created by the violation of a statute designed for his protection. The question would have been radically different if a judgment-creditor, or even a stockholder had attempted to deprive the vendor of his equitable lien for the purchase-money, and that is precisely this case.

As to the Thomas mortgage, executed subsequently, I am unable to perceive any equities in favor of the claim secured by it, to prevent its condemnation by the force of the prohibitory clause of the statute.

The judgment should be reversed, and judgment for defendant ordered, with costs.

Miller, Earl and Danforth, JJ., concur; Folger, Rapallo and Andrews, JJ., do not vote.

Judgment reversed.