Dunn v. Hastings.

## LOTTIE A. DUNN

*v.*

## AMBROSE HASTINGS et al.

1. A vendor of chattels, who delivers the same and takes a note with security for the price, has no equity in the nature of a vendor's lien as against the holder of a chattel mortgage previously given by the vendee containing a clause covering after-acquired property which reaches the chattels in question.

2. It is competent and proper for a court of equity, at the suit of a mortgagee of chattels, brought to establish his lien upon after-acquired chattels, to add to a decree establishing such lien a remedy for compensation for deterioration in the value of the chattels pending litigation, or for the value of such as have been removed and converted by the defendant.

Dunn *v.* Hastings.

On final hearing on pleadings and proofs.

On the 3d of July, 1894, the complainant was the owner of a livery stable plant, situate at Nos. 152 and 154 Mulberry street, in Newark, consisting of horses, harness, robes, blankets, wagons, carriages and the ordinary implements of a livery stable. On that day she conveyed the same to Luther Van Pelt and Annie E. Eddy; and took back a chattel mortgage upon the plant, the items of which were scheduled and annexed to the mortgage, to secure $1,000 of the purchase-money, payable in monthly installments of $50 each, with interest, commencing August 1st. In the body of the mortgage the property is described thus:

"All the goods and chattels mentioned in the schedule hereunto annexed and now in our possession, at Nos. 152 and 154 Mulberry street, Newark, N. J., and which said schedule is hereby made a part of this instrument, *together with such goods and chattels of like kind that may be purchased from time to time by said parties of the first part to replace such chattels as may have become used up, worn out or consumed in the course of business carried on at the place aforesaid; the intention being that this mortgage shall cover such property as may be acquired by said mortgagors after the date hereof to use in the livery and boarding stable business.*"

Van Pelt & Eddy took possession of the plant, carried on the livery stable business there for some time, and then Mrs. Eddy conveyed her interest to the other joint owner, Van Pelt. Among the articles mortgaged were ten carriages, four horses and divers sets of harness.

Before Mrs. Eddy conveyed her interest to Van Pelt they had exchanged two of the horses mentioned in the mortgage for two others, which were known as the "Peddy" horses, and paid $35 to boot on the trade. Shortly after Van Pelt became the sole owner he made an exchange of two old carriages mentioned in the mortgage for two new carriages of the same character, viz., buggies fit for use in the livery stable business, and paid $125 cash on the exchange. He afterwards bought, or acquired in exchange, a set of double harness and a set of single harness, at a cost of $35 for the two. It was assumed at the hearing, and there was no contention to the contrary, that these additions, so far as they were additions, were no more than sufficient to keep

the livery plant up to its proper condition and value. In addition to these changes, however, Mr. Van Pelt, about the 1st of September, 1894, purchased an additional pair of horses of a man by the name of Tiplin at an expense of $225, and added them to his livery stable plant. There was no proof as to whether or not these horses made a material addition to the plant, and were more than sufficient to keep it up to the value which it had at the time the complainant's mortgage was given.

He paid for this last purchase of the Tiplin horses by giving two promissory notes endorsed by the defendant Hastings, and as they severally matured paid $25 on them, with the result that in the end Mr. Hastings was obliged to pay them both; and to secure him for the money so paid and for other moneys loaned by Hastings to him, Van Pelt gave to Hastings a chattel mortgage, dated the 15th of December, 1894, upon the four new horses, being the two obtained in exchange, called the Peddy horses, and the two purchased from Tiplin, the two new buggies obtained in exchange for old buggies and the two sets of new harness. Hastings had actual notice of complainant's mortgage. This chattel mortgage was not put upon record, but Mr. Hastings immediately proceeded to enforce the same. The complainant, learning of this, and payments on her mortgage being in arrear, the whole of it not being yet due, filed her bill of complaint on the 28th of December. In it she stated her mortgage and the changes made by Van Pelt in the horses and carriages and the purchase of the Tiplin horses, and charged that all the additions were subject to her mortgage; that Van Pelt had mortgaged to the defendant Hastings the four horses and two carriages acquired by purchase and exchange, and that Hastings threatened to enforce his mortgage and remove the chattels and dispose of them. The bill prayed a foreclosure, the appointment of a receiver and an injunction against Hastings.

The injunction was granted, but it turned out that Hastings had succeeded in pushing his proceedings to a sale two days before the bill was filed, and the chattels mortgaged to Hastings had been sold and purchased by him and again by him transferred to the defendant Barnard for $250, and removed from the

premises. Proceedings in contempt against Hastings were taken but failed. A receiver was appointed, and the remaining chattels not removed by Hastings were sold and produced a sum not sufficient to pay complainant's mortgage. The complainant then filed an amended bill, making Hastings and Barnard defendants, setting out the circumstances and praying that her mortgage might be declared to be in equity a lien upon the chattels which Hastings had sold and removed, and that he might be decreed to account for their value to an extent, if sufficient, to pay the balance due on her mortgage.

*Mr. Frank E. Bradner*, for the complainant.

*Mr. Ambrose Hastings, pro se.*

PITNEY, V. C.

I was embarrassed in hearing this cause by the circumstance that the defendant was without counsel. But it seemed to me that the only ground of defence which he could set up was that, by reason of his having paid the consideration money of a portion of these chattels by becoming surety on the note given for their price, he was, as to them, invested with an equity superior to that of the complainant.

The complainant is in the situation of a person asking for the specific performance of a contract, and such is the nature of her suit. The clause in her mortgage giving her a lien upon after-acquired chattels has no effect at law. It must be construed as a covenant on the part of the mortgagor to give her such lien, which may be enforced in this court by relief, in the nature of specific performance, against the mortgagor or his assignee, with notice, and must be subject to all defences which would lie against an ordinary bill for specific performance.

Upon the facts appearing at the trial, there can be no doubt that the goods taken and carried away by the defendant Hastings were clearly within the description of after-acquired property which should become subject to the mortgage. Those taken in exchange are clearly so. But the clause goes further than to give

Dunn *v.* Hastings.

the complainant an equitable lien upon new property acquired to replace the old that was worn out, because it expressly declares that it is to cover all property acquired for use in the livery and boarding stable business, and the two Tiplin horses and the new sets of harness come within it.

At first, I had a hope that I might be able to hold that the fact that Hastings had indirectly paid for a portion of these chattels by paying the promissory note which was given for them, might subrogate him to the right of the original vendor, and so give him a vendor's lien upon these two horses which was superior to that of the equitable lien acquired by complainant by virtue of her original mortgage. But, upon reflection, I am unable to adopt that view, and come, with regret, to the conclusion that the complainant's equity is superior. She certainly had the right to stipulate as she did for a lien upon after-acquired property, and she put her mortgage promptly on record. All persons dealing with the mortgagors were bound to take notice of it. When the original owner of the newly-acquired chattels sold them to the mortgagor and took a promissory note for the consideration, with security, he was bound to take notice that they at once became subjected to the equitable lien of complainant's mortgage, and that whatever lien he had was waived by his taking a note on time, with security, and delivering the horses without condition to the purchaser, and the right of the defendant Hastings could not rise higher than that of the vendor and payee of the note given for consideration money.

The doctrine of vendor's lien, as far as I can find, has never been extended to personal chattels beyond the exercise of the right of stoppage *in transitu.*

The suggestions to the contrary by Professor Pomeroy (*3 Pom. Eq. Jur.* § *1249 et seq.*) rest upon cases where the original contract of sale provided for a lien for a portion of the purchase-money, and the formal means adopted for insuring it were defective. *Coman* v. *Lakey, 80 N. Y. 345 ; Amerman* v. *Wiles, 9 C. E. Gr. 13.*

It is to be observed that the complainant's right to a lien upon after-acquired property is a part of the consideration of her con-

tract. She sold the plant at the price named, and gave time for its payment, presumably upon the strength of the vendor's contract to give a lien upon future acquisitions and additions to the plant. Her claim, therefore, is meritorious and based upon a valuable consideration, and as soon as the new purchases were delivered to the mortgagor, and became, as they did, a part of the plant, her right vested and became at once paramount. Hastings had actual as well as constructive notice of her mortgage.

I must, therefore, adjudge that complainant's mortgage is prior to that of defendant Hastings'; and, notwithstanding the sale to defendant Barnard, who is not shown to be a *bona fide* purchaser without notice, is still a lien upon the chattels.

Complainant prays for such relief and a sale of the chattels, or that the defendants may be decreed to account for their value, with the usual prayer for other relief.

The more difficult question is what relief can and ought the court to give in this cause. Granting that the horses, carriages and harness are still in existence, it is plain that they cannot be of the same value now as when removed from the premises in December, 1894. The natural wear and tear, due to their use, with the addition to the age of the horses, render certain a deterioration in their value.

Then their value to the complainant as mortgagee of a plant consisted, more or less, in the fact that they constituted a material part of that plant. A glance at the schedule in her mortgage shows this. The probability is that she could have realized more for the complete plant, sold as a whole as it stood before the removal of the articles mortgaged to Hastings, than she could by selling it out by the piece. At least she was entitled to the opportunity to do so.

The complainant was obliged to come to this court in order to establish her equitable title. She has no standing in a court of law. Under such circumstances the familiar rule is that the court has the power, and ought, if practicable, to give complainant complete relief.

The power and duty of this court to do so in cases of specific

performance is well settled. *Borden* v. *Curtis, 3 Dick. Ch. Rep.*
*120,* where some of the authorities are collected and reviewed.

There is a line of cases decided in England before Lord
Cairns' act of *21 and 22 Victoria* which more nearly apply to
the case in hand. They are *Foster* v. *Deacon, 3 Mad. 394;*
*Nelson* v. *Bridges, 2 Beav. 239; 3 Jur. 1098 (Lord Langdale);*
*Binks* v. *Lord Rokeby, 2 Swanst. 233, 237 (Lord Eldon);* *Fer-*
*guson* v. *Tadman, 1 Sim. 530; Robertson* v. *Skelton, 12 Beav.*
*260; 19 L. J. Ch. 140 (Lord Langdale); Prothero* v. *Phelps,*
*7 De G., M. & G. 722; 25 L. J. Ch. 105* (better report), where
the question was fully discussed by counsel and all the cases were
cited. In that case Lord-Justice Turner said (*7 De G., M. & G.*
*734*): " That it was competent to this court to have ascertained
the damages, I feel no doubt. It is the constant course of the
court, in cases between vendor and purchaser, upon a sufficient
case being made for the purpose, to direct an inquiry as to the
deterioration of the estate pending the contract, and in so doing
the court is in truth giving damages to the purchaser for the loss
which he has sustained by the contract not having been literally
performed."

In *Ferguson* v. *Tadman* there was deterioration in an estate
agreed to be sold, between the time the vendor agreed to give
possession and the time when he was actually able to give pos-
session, the amount of which was ascertained and assessed by a
master first, and afterwards, on exceptions to his report, an issue
was framed and tried by a jury, and the amount of the de-
terioration thus ascertained was deducted from the purchase-
money.

In *Nelson* v. *Bridges* the contract was for the privilege of
mining and raising stone from a plot of ground. The suit was
by the grantee against the grantor, who had, in violation of his
agreement with the complainant, granted the same privilege to
another party, who had obtained possession and mined and car-
ried away a large amount of stone. Decree for specific perform-
ance having been granted to the complainant, he then filed a sup-
plemental bill to recover the value of the stone which had been
carried away. Lord Langdale, in delivering judgment, said:

. " The stone, or a quantity of the stone, which the plaintiff had obtained a license to quarry, has actually been taken away by the defendant Wordsworth, so that, while the performance of the agreement has been resisted and delayed by the defendants, they, or one of them at least, has taken away a portion of the very subject-matter of the suit, and the plaintiff has been thereby forever deprived of the full benefit of his contract. *If that circumstance had been known at the first hearing, I cannot have the least doubt but that the court would, in the exercise of its jurisdiction, have put in a due course of investigation the question of the amount of compensation which ought to be made to the plaintiff.* This matter, it appears, was not brought to the attention of the court at that time, and a supplemental bill is now filed by the plaintiff for the purpose of obtaining compensation. It is said that such compensation might originally have been had at law, or, if not, that, at least, it might have been obtained at law by perfecting the decree for the specific performance of the agreement in some particular form. I am of opinion that it is not necessary for this court, when it has once entertained jurisdiction in a case, to resort to that circuitous mode of giving relief. I think, moreover, that if this matter had been before the court at the first hearing, it would have been put in a proper train of investigation." He then directed an issue to ascertain the amount of damages which the complainant had sustained.

*Phillips* v. *Sylvester, L. R. 8 Ch. App. 173 (1872)*, decided by Lord Selborne, affirming the master of the rolls, is to the same effect.

These cases establish the doctrine that where the subject of the contract has deteriorated in value, or has been partially abstracted pending the litigation, under circumstances which relieve the purchaser from responsibility therefor, he may have relief by an ascertainment of the amount of the damages and a deduction therefor from the contract price, and this may be done either under the original bill or by means of a supplement. I think the doctrine applies to this case.

. · The complainant here occupies the position, and is entitled to the standing, of a purchaser who has paid the purchase-money

for these goods.   It was conceded that the chattels in question are not of sufficient value to pay the amount remaining due to the complainant.   Under these circumstances, I think the complainant is entitled to her choice of three remedies—*first*, to have the horses, carriages and harness delivered to the receiver, to be by him sold and the proceeds applied towards the payment of the balance due on her mortgage; *second*, to receive from the defendant Hastings the sum of $250, with interest from December 25th, 1894, that being the sum for which he sold the chattels to the defendant Barnard; or, *third*, to bring an action at law against Hastings and Barnard, or either of them, in such form as she may be advised, in which they shall be restrained from setting up that the chattels are not covered by and included in the mortgage in all respects as if they had been in existence and owned at its date by the mortgagors and specially named in the mortgage, and she may count on such a mortgage.

Complainant is entitled to costs as against Hastings.