## NICCLOY v. TREASURE.

(Supreme Court, Equity Term, Monroe County.   March 22, 1909.)

1. HUSBAND AND WIFE (§ 149*)—WIFE'S SEPARATE PROPERTY—SET-OFF OF DEBTS DUE FROM HUSBAND.

In the absence of evidence that a mortgagee authorized her husband's debts to the mortgagor to be credited on the mortgage debt, such debts cannot be treated as a payment thereon.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 573; Dec. Dig. § 149.*]

2. CHATTEL MORTGAGES (§ 282*)—ACTIONS TO FORECLOSE—SCOPE OF INQUIRY.

In a foreclosure action by the assignee of a second chattel mortgage against the purchaser from the original mortgagee, plaintiff is not entitled to a determination of the question whether the first mortgage covered certain articles purchased after the execution of the first mortgage, and which plaintiff claims were included in the second mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 568; Dec. Dig. § 282.*]

3. CHATTEL MORTGAGES (§ 162*)—RIGHTS OF PARTIES—AFTER DEFAULT.

A chattel mortgagor, by failing to make payments as stipulated, forfeited her conditional title, and thereafter had only an equity of redemption.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 293; Dec. Dig. § 162.*]

4. CHATTEL MORTGAGES (§ 225*)—TRANSFER OF PROPERTY—RIGHTS OF TRANSFEREE AS TO MORTGAGEE.

A chattel mortgagor, after default, can transfer no more than her equity of redemption, so that title under her transfer, made expressly subject to the mortgage, can be perfected only by payment of the first mortgage, so that a contention that the original mortgagee, by permitting the sale of the property after default without foreclosing, and by endeavoring to collect the mortgage debt from the transferee and subsequently selling the property, waived her mortgage or accepted the payments made as full payment, was untenable.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 468; Dec. Dig. § 225.*]

5. CHATTEL MORTGAGES (§ 127*)—RIGHTS OF PARTIES—TITLE OF MORTGAGOR.

A purchase-money chattel mortgagor did not get a complete title until the mortgage debt was paid.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 216; Dec. Dig. § 127.*]

6. CHATTEL MORTGAGES (§ 141*)—PRIORITY—MORTGAGE.

A second chattel mortgage, expressly given subject to the first mortgage, cannot be made a superior lien to the first mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 239; Dec. Dig. § 141.*]

Action by William F. Niccloy against James H. Treasure, impleaded with Charles H. Mann and another.   Complaint dismissed as against principal defendant.

Action to foreclose a chattel mortgage for $540 made by the defendant Charles H. Mann to the defendant Anna Keady on the 21st day of December, 1907, upon the furniture, etc., in the hotel known as the Wilcox House in the village of Honeoye Falls, N. Y., which mortgage defendant Keady assigned to the plaintiff on the 16th of January, 1908, as collateral security.   The only issue brought to trial is that made by the answer of the defendant Treas-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

urer. It does not appear whether the other ·defendants answered or are in default.

· Lyman J. Baskin (Robert Averill, of counsel), for plaintiff.
Martin Davis, for defendant Treasure.   .

FOOTE, J.   On the 1st day of May, 1907, the defendant Anna Keady purchased the furniture, fixtures, etc., contained in the Wilcox House at Honeoye Falls, N. Y., for the sum of $1,600, paying $300 in cash and executing to Minnie Loss of Honeoye Falls a chattel mortgage upon the property purchased to secure payment of the remaining $1,300. This mortgage recited that it was given to secure the unpaid part of the purchase price of said property purchased that day. By the terms of the mortgage said $1,300 and interest were to be paid $35 on June 1, 1907, $35 July 1, 1907, and $40 on the 1st day of each month thereafter until the full amount was paid. This mortgage was duly filed as required by law, and. the defendant, Anna Keady, took possession of the property and made the payments maturing on the mortgage down to and including the 1st day of November, 1907, since which time no payments have been made thereon. On the 21st day of December, 1907, the defendant, Anna Keady, sold the property to one Charles H. Mann, who gave back to her a chattel mortgage on this furniture for $540. This mortgage recites that it is made subject to the first mortgage to Loss "and upon which there is now unpaid $1,060." There was, in fact, due upon the first mortgage $1,090, with some interest. The amount, $1,060, stated to be unpaid in the second mortgage, was arrived at by attempting to charge up to Minnie Loss some alleged indebtedness of Minnie Loss' husband to the husband of the defendant Keady for a bar bill. No satisfactory evidence has been given that such a bar bill existed, at least to that amount, and there is no evidence that Minnie Loss authorized it to be charged against her mortgage, or that her husband had any authority so to do, and it cannot be treated in this action as a payment upon that mortgage. Charles H. Mann was fully informed of the existence and terms of the first mortgage, and knew that there was money due thereon, but he kept the holder of the first mortgage from taking any steps to enforce the mortgage by promises to make payments, but he made no payments, and about the 1st of January, 1908, he locked up the hotel and abandoned the business and property.

Shortly thereafter Minnie Loss took possession of the property, and about the middle of February, 1908, sold it to the defendant Treasure, receiving $10 in cash and Treasure's check for the balance of the purchase price, which was $325. At the time of the trial this check remained unpaid. Before making this sale, Minnie Loss claims to have given notice to Anna Keady and Charles H. Mann of her intention to foreclose her mortgage and sell the property. A short time after the sale to Treasure, the plaintiff, Niccloy, as assignee of the second mortgage, demanded of Treasure possession of the property under his mortgage, and, it being refused, brought this action to foreclose, and until such demand neither the defendant Treasure nor Minnie Loss had any knowledge or notice of the assignment of the second mortgage by Anna Keady to the plaintiff.

It is claimed by the plaintiff that, while the defendant Anna Keady was in possession of the hotel between the 1st day of May and the 21st of December, 1907, she purchased and put into the hotel some additional articles of furniture, and that these articles, while not covered by the first mortgage, are covered by the second mortgage. Whether that be so or not may not properly be determined in this action. It is brought to foreclose the chattel mortgage upon all the property covered by the second mortgage, and to deprive the defendant Treasure of any right or interest therein. It attacks his title to the property covered by the first mortgage to Loss, and in effect denies the validity of that mortgage; and, as I have reached the conclusion that it cannot be maintained for such purpose, I do not think an inquiry should be entered upon to ascertain if there may not be some few articles of furniture in this hotel not covered by the first mortgage which the plaintiff may have a right to take from the custody of the defendant Treasure. Indeed, the defendant Treasure concedes that he has no title to any property which Anna Keady purchased and put into the hotel after she executed the first mortgage.

The position of the plaintiff, if I apprehended it correctly, is that because the husband of Minnie Loss, who had acted as her agent in reference to her mortgage, knew of the intended sale by Anna Keady to Mann, and allowed it to be made without objection and without proceeding to enforce the first mortgage for the default in payment which then existed, therefore the default and consequent forfeiture was waived, and that Minnie Loss by acquiescing in the sale by Keady to Mann, and endeavoring to collect pay on her mortgage from Mann and subsequently selling the property to the defendant Treasure for $335, is to be considered as having either waived her first mortgage or accepted that sum as payment of it in full, leaving the second mortgage now held by the plaintiff as the only lien upon the property. I am unable to accept this view. The defendant, Treasure, is in possession under Loss as the holder of the first mortgage. It is a purchase-money mortgage. Anna Keady did not get and could not give a good title until that mortgage was paid. Coman v. Lakey, 80 N. Y. 345. Such a conditional title as Anna Keady had became forfeited by her failure to make the payment due on the mortgage on the 1st of December, 1907, and she had no title thereafter. She could at most transfer a bare equity of redemption, and that is all that passed by her transfer to Mann and his second mortgage to her. It was made expressly subject to the first mortgage, and title under the sale to Mann and the second mortgage he gave can only be perfected by redeeming from the first mortgage and paying it off. Until that is done, Minnie Loss has a right to possession, either personally or through the defendant Treasure, whom she has put in possession as purchaser. Bragelman v. Daue, 69 N. Y. 69; Campbell v. Birch, 60 N. Y. 214; Judson v. Easton, 58 N. Y. 664; West v. Crary, 47 N. Y. 423.

Whether the sale by Minnie Loss to the defendant Treasure is a valid foreclosure of the first mortgage sufficient to bar the right of redemption on the part of the plaintiff or Charles Mann, it is unnecessary to determine. If it was not, then the Minnie Loss mortgage

remains in force, and she or her grantee, the defendant Treasure, has a right to possession of the property. Plaintiff's remedy, if he has any, is to tender the amount due on the first mortgage, and, if not accepted, to bring his action for leave to redeem. There is no method known to the law by which he can make his second mortgage, made expressly subject to the first mortgage, a superior lien or claim upon the property, to that mortgage, or deprive the holder of that mortgage, or his transferee, of possession of the property until it is paid.

Plaintiff's complaint must, therefore, be dismissed as against the defendant Treasure, with costs to the defendant Treasure against the plaintiff.